A. D. LEECH, Assignee, etc., Appellant, v. FIRST NATIONAL BANK OF MARYVILLE, MISSOURI, Respondent.

Kansas City Court of Appeals, May 11, 1903.

1. **Presumption: CONFLICT: DEPOSIT FOR ANOTHER: INNOCENCE.** Ordinarily a deposit of money to the credit of another, being for such other's benefit, will be presumed to have been accepted by him; but this only holds in a lawful transaction, since the primary presumption is always in favor of innocency and must prevail in any conflict of presumption.

2. ——: ——: **ACCEPTANCE OF DEPOSIT: ASSIGNEE.** The bringing of a suit by an assignee can not be construed as an acceptance of a deposit by the assignor, since it is not his act and no presumption of acceptance arises therefrom.

3. ——: **ACCEPTANCE: DEPOSIT.** Mere deposit in a bank to the credit of another person does not show ownership in such other in the absence of a showing of acceptance or a presumption thereof.

4. **Banks and Banking: ADMISSION: CONDITION OF BOOKS: OWNERSHIP OF DEPOSIT.** The letter of a bank is construed and held to be merely the statement of matters appearing on its books and not an admission that the addressee was the owner of a deposit.

5. ——: **DEPOSIT: MARGINS: TRUST FUND: INDEMNITY.** The question whether certain notes paid by customers of the depositor as margins on grain options, where no loss had occurred, were for the purpose of indemnity merely and constituted a trust fund until loss occurred, is undecided.

Appeal from Nodaway Circuit Court.—*Hon. Gallatin Craig,* Judge.

AFFIRMED.

*E. A. Vinsonhaler* and *Gilmore & Brown* for appellant.

(1) There was no testimony tending to support the finding of facts made by the court, but even if the

facts found were true, they did not constitute the fund in controversy a trust fund. Connor v. Black, 132 Mo. 150; Hill v. Johnson, 38 Mo. App. 383; Deierling v. Sloop, 67 Mo. App. 446; Crawford v. Spencer, 92 Mo. 498. (2) The evidence tending to show that the Trader's Grain Company was operating a bucket-shop was improperly admitted. The bank had received the fund in controversy as the money of the Trader's Grain Company, and could not deny the title of its depositor to the fund so long as it was not dispossessed by a superior title. Dougherty v. Chapman, 29 Mo. App. 233; Cole v. Railroad, 21 Mo. App. 443; Sherwood v. Neal, 41 Mo. App. 416; Pullman v. Burlingame, 81 Mo. 11; 5 Cyclopedia of Law and Procedure, p. 172. (3) The money in controversy having been deposited in the name of the Trader's Grain Company is presumed to belong to it. The burden was upon defendant to show that it did not, and there was no testimony tending to sustain such a contention. The finding of fact by the court that the business at Maryville was not authorized by the company, is wholly without evidence to support it.

*W. C. Ellison* and *J. S. Shinabargar* for respondent.

(1) Until margins are appropriated by the broker to reimburse himself for loss, they belong to the customers, and the broker holds them simply as a trustee. In this case, there is no evidence that any loss had been sustained on the customer's side of the transactions. (2) Complaint is made of the lower court's action in admitting evidence to prove that Evans was in the bucket-shop business. The admissibility of such evidence depends upon the purpose for which it is offered. In this case, the object was to show that the deposit was made up of the proceeds of a criminal business, and the object of proving this was to rebut the

presumption that the legally incorporated Trader's Grain Company would accept a deposit of that character, made in its name, but without its express authority.   Branch v. Dawson (30 N. W. 545), 36 Minn. 193; Davis v. Bank, 53 Mich. 163.

ELLISON, J.—Plaintiff is the assignee of the Trader's Grain Company, a corporation located at Kansas City, Missouri, and as such brought this action against the defendant bank for $1,015.77 alleged to have been deposited by the grain company before the assignment and to have been in the hands of the bank as a deposit at the time of the assignment.   The trial was had without the aid of a jury and the court found the fact to be that the grain company did not own the deposit, and declared the assignee could not recover. Judgment being thereupon rendered for defendant, plaintiff duly appealed.

Plaintiff's contention is that the court's finding is not justified by the evidence in the record.   It appears that plaintiff had an agent named Flemming located at St. Joseph, Missouri, who had supervision and charge of the company's business in that part of the State. This agent had an agent at Maryville, Missouri, named Evans, who conducted a business in the name of the company in that vicinity and reported directly to Flemming.   There was evidence amply sufficient to justify the court in finding that Evans did not confine himself to legitimate dealings but did an unlawful business in the company's name; that is, he conducted what is commonly called a bucket-shop business in grain and stocks, contrary to the statutes of this State (sections 2221-2225, Revised Statutes 1899).

One Lee was a customer of Evans at Maryville in the unlawful business and put up with him what is known as "margins" to secure him against loss in the deals.   These sums were deposited by Evans in the defendant bank in the company's name, the understand-

ing with the bank being that they were only to be checked out by Flemming at St. Joseph. There is no evidence that the company ever authorized Evans' unlawful transaction, or that it ever knew of the deposit in controversy, or made any claim thereto prior to the assignment. In this state of the record, the contention is that it is to be presumed the grain company accepted or recognized the deposit, and that it therefore passed to plaintiff's assignee, under the general terms of the deed of assignment.

Ordinarily a deposit of money by a third person to the credit of another, being for his benefit, will be presumed to have been accepted by him. But this is only true of a lawful transaction. It is not true where the presumption would establish an unlawful act, or participation in an unlawful act. For the primary presumption is always in favor of innocence. In conflicting presumptions the latter always prevails. All other presumptions, merely as such, give way to the presumption of innocence. This, though things once shown to exist are presumed to continue. But if their continuance would develop a crime, the presumption would cease and be succeeded by one of innocence. Thus, if it be shown that a man and woman were married and lived together as husband and wife, and one of them is shown to have afterwards married another person: on a trial for bigamy the presumption of innocence will overcome the presumption of the continuance of the former marriage, and it will be assumed, in lack of other evidence, that the first marriage was, in some way, dissolved. The cases on this head are discussed in Waddingham v. Waddingham, 21 Mo. App. 628-631. And an apt illustration of the power of the presumption of innocence to overcome other presumptions is found in Klein v. Laudman, 29 Mo. 259.

It is, however, said by plaintiff that the mere bringing of this action is an acceptance of the deposit. But the institution of this action is not the act of the

grain company. It is an act of the plaintiff himself
after that company's decease and necessarily can not
be its act. We are therefore satisfied that if plaintiff's
claim or title to the deposit depends upon a presump-
tion that the grain company accepted it, his case must
fail.

The further question, therefore, is, did the deposit,
in fact, aside from any presumption, belong to the grain
company. The only evidence that it did belong to the
company is that it was deposited by Evans in the com-
pany's name. But the *mere* deposit of money in a
bank by a third person to the credit of another does
not show ownership in the latter in the absence of a
showing of acceptance, or a presumption of acceptance.
Branch v. Dawson, 36 Minn. 193.

Counsel claim that defendant admitted in writing
that the company owned the deposit. This claim is
based on a letter written by defendant's president to
plaintiff a few days after his appointment as assignee,
in which the president returned plaintiff's draft for
the deposit unpaid, and in which he stated: ''The Tra-
der's Grain Company have no funds in this bank. It
did have $1,015.77, but at the time your notice was re-
ceived it was indebted to us so we charged off the ac-
count.'' That was merely the statement of defendant
based on the appearance of the matter on its books.
So far as the books disclosed anything, they showed the
account of deposit to be that of the grain company.
But the appearance of defendant's books could not show
an acceptance of the deposit by the grain company. That
was a condition or appearance brought about by the
act of Evans in so making the deposit in furtherance
of his unlawful business, and of which the grain com-
pany was not shown to have knowledge. The trial
court was justified in refusing to regard the letter as
proof of ownership in the grain company. Plaintiff
having failed to show that the company accepted the
deposit or had any knowledge of it, and there being no

presumption that it accepted it, his case must also fail on this head.

There were further questions made in the argument of counsel. It appears from the testimony of Flemming (the manager at St. Joseph) that the account in the defendant bank was made up from margins put up by a customer to protect the dealer in case of loss in the transaction. Defendant contends that as margins they could not be the property of the grain company. That the money, termed a margin, is but an indemnity to the dealer, and that unless there be a loss shown sufficient to swallow up the margin it remains the property of the customer. That therefore, no loss being shown, the grain company has no right to claim the deposit as its money. And that, if the margins were put up for indemnity against loss in a legitimate transaction, they constituted a trust fund and did not pass to the assignee by the deed of assignment. But since what we have already said disposes of the case we need not consider those questions.

We are satisfied that the evidence was sufficient to justify the court in its finding of the character of the business carried on by Evans, and that the grain company never authorized the business, nor accepted the deposit.

The judgment is affirmed. All concur.