Hugpies, J.
This is an action to reverse the judgment of the court of common pleas upon a directed verdict for the plaintiff at the close of all the evidence.
The facts, briefly stated, are as follows:
On the 31st day of October, 1910, The Zanesville & Western Railway Company made a pay-roll draft payable to the order of James Horton, a supposed .employe. FIorton was a fictitious charac *69 ter. His name appeared upon the pay-roll through the. fraud of Louis Irvin, who was at the time a clerk in the office of the division engineer at Bucyrus.
The division engineer prepared the time sheets for the month. After signing, approving and sealing them in an envelope, he deposited them in the office mail box to be transmitted to the home office.
Irvin abstracted the envelope from the mail box, and, after opening it, wrote in the name of James Horton as an employe, placing opposite his name the amount supposed to have been earned by him during the month, and then replaced the envelope in the mail box.
When the draft was returned, Irvin, by similar fraud, abstracted it from the returning mail, forged the endorsement of Horton thereon, and deposited it with The Second National Bank of Bucyrus, receiving in cash the amount for which' it was' drawn.
The Bucyrus bank forwarded it to The New First National Bank of Columbus, with all prior endorsements guaranteed over its endorsement, which bank in turn offered it to a Toledo bank. The draft was presented by the Toledo bank to the railroad company and paid.
Thereafter the railroad company discovered the fraud and forged endorsement, returned the draft to the Toledo bank, and received credit therefor. The Toledo bank in turn returned it to the Columbus bank and received credit therefor, but when the Columbus bank returned it to the Bucyrus bank, demanding credit therefor, the same was re *70 fused, and this suit was brought to recover thereon.
We have related the history of but a single draft. There were two drafts involved, but the history of one is the history of both.
At the trial, the court permitted a witness to relate a statement made by Louis Irvin after he had been arrested for the forgery, in which Irvin stated the facts above chronicled in so far as they concerned his connection with the forgery.
. Before this evidence was introduced, it was shown that Irvin had been a clerk in the office of the division engineer, that he had access to the mail, and that he had died shortly after his arrest.
There are two questions presented for determination :
First. Is the Bucyrus bank liable to the Columbus bank under the above outlined facts?
Second. Is the statement of Irvin, the deceased, competent ?
In 2 Daniel on Negotiable Instruments (6 ed.), Section 1369, it is stated:
“It is a general principle of law that money paid under a mistake of fact may be recovered back. And accordingly, where one pays money on forged paper by discounting or cashing it, he can always recover it back, provided he has not himself contributed materially to the mistake by his own fault or negligence, and provided that by an immediate or sufficiently early notice he enables the party to •whom he has paid it to indemnify himself as far as possible.”
Along this same line it has been held that an action for money had and received lies in all casés *71 where one has the money of another which he can not in equity and good conscience retain. It lies, therefore, for money paid on a negotiable instrument by mistake, or upon a consideration which has failed, because in such case the plaintiff did not intend to give his money to the defendant, and the latter can not conscientiously retain money for which he has given no equivalent. 3 R. C. L., page 1291, and note 4.
So, also, money paid upon the forged endorsement of a bill or check may be recovered. The holder, whether he endorses the instrument or not, warrants the genuineness of all prior endorsements. If, therefore, an instrument upon which the name of a prior endorser has been forged is paid, the amount may be recovered from the party to whom it has been paid, or fróm any party who endorses it subsequent to the forgery. 3 R. C. L., 1296, note 11.
And so, where a stranger to the instrument forges the payee’s endorsement thereto and transfers it to another who presents it to the drawee and receives payment, it is held that the payee may recover the amount from the person thus receiving payment.
Hence, if the facts in this case have been proved by competent evidence, the judgment of the trial court is correct.
Was the evidence of the statements of Louis Irvin, deceased, competent?
This evidence is clearly hearsay, and, if competent, must come within one of the exceptions to the general rule that hearsay evidence is not proper evidence.
*72 It has been laid down in the textbooks that an exception to the hearsay rule admits declarations of deceased persons under certain circumstances. “But, to render. them admissible, it must appear that the declarant is deceased; that he possessed , competent knowledge of the facts, or that it was ■ his duty to know them; and that the declarations were at variance- with his interest. When these circumstances concur, the evidence is received, leaving its weight and value to be determined by other considerations.
“The ground upon which this evidence is received, is the extreme improbability of its falsehood. The regard which men usually pay to their own interest is • deemed a sufficient security, both that the declarations were not made under any mistake of fact or want of information on the part of the declarant, if he had the requisite means of knowledge, and that the matter declared is true.” 1 Greenleaf on Evidence, Sections 147 and 148.
This rule has to a degree been recognized by our supreme court in the case of Bird, Admr., v. Hueston, 10 Ohio St., 418.
In a well-considered case, County of Mahaska v. Ingalls, 16 Iowa, 81, the court held that verbal declarations are receivable in evidence in an action between third parties when accompanied by the following prerequisites: First, that the declarant must be dead; second, the declaration must have been against the pecuniary interest of a declarant at the time it was made; third, the declaration must be of a fact in relation to a matter concerning which the declarant was immediately and personally cognizable; and, fourth, the court should *73 be satisfied that the declarant had no probable motive to falsify the fact declared.
'We hold, therefore, that the evidence of the declarations of Louis Irvin, deceased, was properly admitted.
It must follow, therefore, that the judgment of the trial court is correct and must be affirmed.

Judgment affirmed.

Kinder and Crow, JJ., concur.