# CITY OF ST. PAUL v. MERCHANTS NATIONAL BANK.[1]

March 31, 1922.

No. 22,710.

**Protection of bank in payment of depositor's check.**

1. As between a bank and its customers the general rule is that in order to charge the account of a depositor a bank must pay a check only to the payee named, or his order, and payment made otherwise is at its peril, unless it can claim protection upon some principles of estoppel or negligence chargeable to the depositor.

**Bank must ascertain at its peril whether indorsement is genuine.**

2. It is the duty of a bank, when a check, drawn by a depositor and payable to order, is presented by one claiming under an ostensible indorsement by the payee. to ascertain at its peril that the indorsement is genuine.

**Depositor may assume genuineness of indorsement on returned checks.**

3. A depositor has the right to assume, when checks are returned to him by a bank, that it has ascertained the genuineness of the indorsement thereon.

**Indorsement of check payable to nonexisting person a forgery.**

4. Where by the fraud of a third person a depositor of a bank is induced to draw a check payable to a nonexisting person or order, the drawer, being ignorant of the fact and intending no fraud, does not authorize the bank to pay it and charge the amount to the account of its customer, although it appears to have been indorsed by the party named therein as payee. Such indorsement is, in effect, a forgery.

Action in the district court for Ramsey county to recover $8,313.81 upon spurious orders. The case was tried before Olin B. Lewis, J., who at the close of the testimony denied defendant's motion to direct a verdict in its favor on the grounds: (1) That section 6378 precluded a recovery; (2) that the defense of an account stated was a full and complete defense to the action (Scanlon-Gipson Lumber Co.

[1]Reported in 187 N. W. 516.

v. Germania Bank, 90 Minn. 478); (3) that the uncontroverted facts raised an estoppel against the city; (4) that the negligence of the city barred a recovery, the handling of funds by the city being but an administrative step in the conduct of the city's affairs; and (5) that the checks were issued to fictitious and nonexisting persons and under section 5812, G. S. 1913, were payable to bearer, and any person had a right to cash them. Plaintiff's motion for a directed verdict was granted. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. D. O'Brien* and *J. D. Armstrong,* for appellant.
*Arthur E. Nelson* and *Carlton F. McNally,* for respondent.

QUINN, J.

Appeal by defendant from an order denying its motion for a new trial. The action was brought for the recovery of $8,222.01, paid by defendant upon vouchers issued by the plaintiff against its deposit account with the defendant, upon which the payees' names were forged and which were spurious when issued.

The Merchants National Bank, during the years 1917 to 1920, both inclusive, was a depository of city funds of the city of St. Paul. The city kept a large account with the bank subject to check during that time. Frank F. Roeller was, and for a number of years prior thereto had been, employed as chief clerk in one of the bureaus of the department of public works of the city. He had charge of a large number of men employed by the city. It was his duty to make out the time slips for the men. He conceived of the idea of padding the payroll to his own advantage. To this end he issued time slips in the names of persons not then in the employ of the city and included them with the regular slips. The payrolls were made up from the slips and signed by the commissioner of public works, then sent to the comptroller who made out the pay checks or vouchers, which were signed by the commissioner of finance. Roeller would then receive the checks for delivery to the men and in this manner obtain the spurious checks issued in the names of nonemployes. He would indorse the name of the payee on each of the spurious checks and

get them cashed at business places about the city, when in turn they were passed through the various banks, finally reaching the defendant bank where they were paid and charged against the plaintiff's check account. This manner of business was carried on during the four years mentioned. All checks paid by the bank and charged against the plaintiff's check account were returned to it at the end of each month. At the close of the trial the court directed a verdict in favor of the plaintiff for the amount of the spurious checks so paid and charged to its account.

Plaintiff bases its right to recover squarely upon the proposition that it was the duty of the bank to account for all funds received by it as such depository, and that the city is not limited or controlled by the fact that it might also look to the officials who issued the checks, or to their bonds; that the bank is liable for the amount so paid and that its negligence in failing to ascertain whether the indorsements of the payees' names upon the checks were genuine, was the proximate cause of the loss, the same as though the checks had been properly issued. Upon the other hand, it is contended by defendant that the burden is upon the plaintiff to show that it did not negligently suffer or permit any course of conduct upon its part or that of its officials which materially contributed to the payment of the money in controversy, and that if the plaintiff were negligent in this regard it cannot recover in this action. It is further contended that the issue of defendant's negligence in the first instance and that of the plaintiff's contributory negligence in the second, were questions of fact which should have been submitted to the jury. There is no controversy as to the relation of the parties; the character and amount of the deposit account; the number and amount of the checks in question; their description and method of creation, nor the manner of their indorsement and payment.

As between a bank and its customers the general rule is that, in order to charge the account of a depositor, a bank must pay a check only to the payee named, or his order, and payment made otherwise is at its peril, unless it can claim protection upon some principles of estoppel or negligence, chargeable to the depositor. The rule is that a banker on whom a check is drawn must ascertain at his peril

the identity of the person named in it as payee and whether his indorsement thereon is genuine. It is only when he is misled by some negligence or fraud of the drawer that he can set up his own mistake in this particular against the drawer. 3 R. C. L. § 171, p. 542, and cases cited; Grand Lodge A. O. U. W. v. State Bank, 92 Kan. 876, 142 Pac. 974, L. R. A. 1915B, 815; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. 821. In Armstrong v. Nat. Bank, 46 Oh. St. 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. 655, it was held by the supreme court of Ohio that as between a bank and its customers the duty of the banker is, in all cases, to pay to the person named, or his order, where the terms of the check are such, and he may and should withhold payment until fully satisfied as to the genuineness of the indorsement. See also Frank v. Chemical Nat. Bank, 84 N. Y. 209, 38 Am. Rep. 501. The bank's obligation is to pay the checks only upon a genuine indorsement. The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity by requiring identification when the check is presented, or a responsible guaranty from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by its direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine. 3 R. C. L. p. 535, § 165; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 22 Am. St. 821, 12 L. R. A. 791; German Sav. Bank v. Citizens' Nat. Bank, 101 Iowa, 330, 70 N. W. 769, 63 Am. St. 399; Murphy v. Metropolitan Nat. Bank, 191 Mass. 159, 77 N. E. 693, 114 Am. St. 595.

It is urged that the larger portion of the checks in controversy was issued to fictitious or nonexisting persons. Roeller testified that such checks were issued to persons not at the time in the employ of the city; that he knew certain of them and could not say that any of the checks were to fictitious persons. If such were the facts, the burden of proof was upon appellant. The testimony discloses that the city had no knowledge that the checks were improperly issued. However, where by the fraud of a third person a depositor of a bank

is induced to draw a check payable to a nonexisting person or order, the drawer being ignorant of the fact and intending no fraud, the bank is not authorized to pay the same and charge it to the account of the drawer on the indorsement of the party presenting it, although it appears to have been previously indorsed by the party named as payee. Such indorsement is, in effect, a forgery, and the payment thereof by the bank confers no right on it as against the drawer of the check. Armstrong v. Nat. Bank, supra; Shipman v. Bank, supra; Board of Co. Commrs. of Ramsey County v. Nelson, 51 Minn. 79, 52 N. W. 991, 38 Am. St. 492; Board of Co. Commrs. of Ramsey County v. Elmund, 89 Minn. 56, 93 N. W. 1054. In the case last cited it is held that, under such circumstances, a municipal corporation is not estopped from saying that the payees' names were fictitious and the indorsements forged.

Affirmed.