NEW YORK CASUALTY COMPANY v. MICHAEL SAZENSKI,
d. b. a. MIKE'S PLACE, MIKE'S BAR, AND MIKE'S CAFE.[1]

October 9, 1953.

No. 35,837.

[1]Reported in 60 N. W. (2d) 368.

*Robert Cowling* and *Walter P. Wolfe,* for appellant.

*F. N. Furber, F. W. Thomas,* and *Fowler, Youngquist, Furber, Taney & Johnson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

The New York Casualty Company, hereinafter referred to as the Casualty company, instituted this action against Michael Sazenski, doing business as Mike's Bar, to recover $4,637.40 paid him by Farmers Union Grain Terminal Association, hereinafter referred to as Farmers Union, on 42 checks issued by the latter and cashed by defendant for a customer who had forged the endorsement of the payees thereon.

The Casualty company, under a policy issued by it to Farmers Union and its depository, American National Bank, had insured them both against loss occasioned by fraud or forgery. Under this policy it reimbursed Farmers Union for the loss sustained and received an assignment of all the rights of the latter against defendant. It then instituted this action against defendant as assignee and subrogee of Farmers Union. At the close of the testimony, the trial court directed a verdict in favor of the Casualty company. This is an appeal from an order denying defendant's subsequent motion for judgment notwithstanding the verdict or for a new trial.

The facts are as follows: In 1940 Farmers Union hired Howard E. Berke in a clerical capacity. Previous thereto he had been convicted and sentenced for forgery, although this was then unknown to Farmers Union. In 1943 he was transferred to the feed division of Farmers Union where he bought and sold feed; served as a bookkeeper; settled claims against Farmers Union; and issued requisitions to its cashier for checks to pay claims thus settled or for grain purchased by Farmers Union. The checks thus requisitioned were made out by the cashier, signed by proper officers of Farmers Union, and turned over to Berke for delivery to the payees designated therein.

Between March 1, 1944, and July 1, 1946, Berke fraudulently requisitioned 42 such checks totalling $4,637.40 made payable either to nonexisting payees or payees who had no interest in the proceeds thereof. Thereafter, from time to time Berke, after fraudulently endorsing the names of such payees therein, and at times adding his own endorsement thereto, would present the checks to defendant for cashing. Defendant, without further inquiry as to Berke's right to the checks or as to the endorsements thereon, cashed them and paid the proceeds thereof to Berke. Defendant in turn endorsed them to his depository bank, which in turn presented them for payment to American National Bank of St. Paul against whom, as depository of Farmers Union, they were drawn. American National Bank, after honoring the checks thus presented, would in the usual course of business charge the amounts thereof against the deposits of Farmers Union.

Berke's misconduct was discovered during the course of an official audit of Farmers Union made in the latter part of 1946 after the last of the checks here involved had been cashed. Defendant was first advised of Berke's misconduct on April 21, 1948, when American National Bank demanded reimbursement from him for the checks honored by it. This was refused by defendant. Farmers Union thereupon demanded and received reimbursement for its loss from the Casualty company under the policy described. This action followed.

On appeal defendant contends (1) that in substance the checks were payable to bearer or his order and, hence, were properly endorsed; (2) that under its policy the Casualty company was not authorized to institute this action; and (3) that Farmers Union was guilty of negligence and laches in failing to discover the fraud or notify defendant thereof until some four years after the first check was presented for payment, thus barring this action.

■ We are of the opinion that the checks in question were not "bearer" checks or payable to the "order" of the holder thereof. M. S. A. 335.052(3) provides that an instrument is payable to bearer only "When it is payable to the order of a fictitious or non-

existing person, and such fact was *known to the person making it so payable; * * *.*" (Italics supplied.) In construing the foregoing in Jorgensen Chevrolet Co. v. First Nat. Bank, 217 Minn. 413, 418, 14 N. W. (2d) 618, 621, 153 A. L. R. 588, we stated:

"* * * where a check is payable to a nonexisting person and the drawer *does not know* that the payee is nonexistent and intends no fraud, the check is not payable to bearer."

The test is whether the maker or drawer of the instrument knew and intended that the instrument was to be made payable to a fictitious person. City of St. Paul v. Merchants Nat. Bank, 151 Minn. 485, 187 N. W. 516, 22 A. L. R. 1221; Home Ind. Co. v. State Bank, 233 Iowa 103, 8 N. W. (2d) 757; Los Angeles Inv. Co. v. Home Sav. Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; Swift & Co. v. Bankers Trust Co. 280 N. Y. 135, 19 N. E. (2d) 992; 7 Am. Jur., Bills and Notes, § 95; 10 C. J. S., Bills and Notes, § 129.

Here the checks were made by the cashier of Farmers Union upon the requisition of Berke. There is no evidence that the cashier or any other official of Farmers Union either knew that the payees described therein were fictitious, or intended that the checks should be issued to nonexisting persons. On the contrary, the evidence clearly establishes that the cashier intended that the payees named in such checks should receive payment thereof because of valid claims possessed by them against Farmers Union.

■ Defendant contends that Berke was in reality the drawer of the checks; that the cashier of Farmers Union was merely an automaton acting upon his direction; and that Berke's knowledge that the payees in such checks were fictitious was, therefore, imputable to Farmers Union so as to make the checks bearer instruments.

We do not agree with this. When an agent or employee abandons the object of his agency and acts for himself in committing a fraud upon his principal, his capacity as agent ceases. Blumberg v. Taggart, 213 Minn. 39, 5 N. W. (2d) 388; Rudd Lbr. Co. v. Anderson, 161 Minn. 353, 201 N. W. 548; Home Ind. Co. v. State Bank, 233

Iowa 103, 8 N. W. (2d) 757; Los Angeles Inv. Co. v. Home Sav. Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; 2 Am. Jur., Agency, § 379; Annotations, 2 L.R.A.(N.S.) 993 and 15 A. S. R. 192. As stated in 2 Pomeroy, Equity Jurisprudence (5 ed.) § 675:

"* * * if * * * the agent commits an independent fraud for his own benefit, and designedly against his principal, and it is essential to the very existence * * * of such fraud that he should conceal the real facts from his principal, then the ordinary presumption of a communication from the agent to his principal fails; on the contrary, a presumption arises that no communication was made, and consequently the principal is not affected with constructive notice."

See, Home Ind. Co. v. State Bank, *supra;* Los Angeles Inv. Co. v. Home Sav. Bank, *supra.* With these principles in mind it is clear that in the instant case the checks involved could not in any sense be regarded as "bearer" paper.

■ It appears that the Casualty company properly instituted this action against defendant. It is well settled that Farmers Union, had it desired, might have instituted the action directly against defendant. As stated in 2 Morse, Banks and Banking (6 ed.) § 474(*d*):

"If, before the title to a check has passed to any other person than the drawer, it be dishonestly or fraudulently obtained from him, and the money collected upon it through a forged indorsement, even though the party who finally actually collects the money is an innocent holder for value, the drawer may maintain his action to recover the amount from the party so having collected the money."

See, Home Ind. Co. v. State Bank, 233 Iowa 103, 8 N. W. (2d) 757; Security Sav. Bank v. First Nat. Bank (6 Cir.) 106 F. (2d) 542, 127 A. L. R. 116; Lindsley v. First Nat. Bank, 325 Pa. 393, 190 A. 876, reversing Tibby Brothers Glass Co. v. Farmers & Mechanics Bank, 220 Pa. 1, 69 A. 280, 15 L.R.A.(N.S.) 519; National Union Bank v. Miller Rubber Co. 148 Md. 449, 129 A. 688.

Under the principles of subrogation, the Casualty company succeeded to the rights of Farmers Union. One who has been compelled to pay another's debt is entitled to the cession of the remedies of the creditor against such debtor. Here under its policy the Casualty company was compelled to pay Farmers Union the indebtedness owed to it by defendant. In consequence, it became subrogated to the rights of Farmers Union to proceed against defendant. See, Bursell v. Morgan, 181 Minn. 462, 233 N. W. 12; Felton v. Bissel, 25 Minn. 15; 6 Dunnell, Dig. & Supp. § 9036. The right of subrogation existing, it was proper for Farmers Union to assign to the Casualty company all its rights against defendant. Flor v. Buck, 189 Minn. 131, 248 N. W. 743; Felton v. Bissel, *supra;* National Surety Co. v. State Sav. Bank (8 Cir.) 156 F. 21; see, also, McKay v. Nat. Union F. Ins. Co. 182 Minn. 378, 234 N. W. 589; City of Ortonville v. Hahn, 181 Minn. 271, 232 N. W. 320; Buell v. United Firemen's Ins. Co. 167 Minn. 183, 208 N. W. 819. The Casualty company, therefore, by virtue of its rights under the principles of subrogation, as well as its rights under the voluntary assignment made by defendant, could proceed, as could Farmers Union, directly against defendant for reimbursement.

■ Defendant cites numerous cases in support of his contention that his equities are superior to those of the Casualty company and that, hence, the latter was not authorized under its policy to proceed in the present action. The cases cited deal with fidelity bonds or bonds of public officials wherein the integrity of the individual is insured for a premium consideration and the insurer agrees that, if the individual thus insured is found dishonest, it will pay for any loss resulting therefrom. Dishonesty resulting in loss is thus the contingency from which liability arises. In such cases it is held that it would be inequitable to permit an insurer to proceed against an innocent third party suffering loss because of the dishonesty of the party whose integrity is insured. The contract in the instant case is not one of fidelity. It insures Farmers Union and its drawee bank against loss resulting from fraud or forgery. No reference is made to the integrity of any particular employee as such—Berke

or any other. The Casualty company, having paid the loss occasioned by Berke's forgeries, succeeded to the rights of Farmers Union to proceed against the party wrongfully receiving the proceeds of the forged instrument. Flor v. Buck, 189 Minn. 131, 248 N. W. 743; Felton v. Bissel, 25 Minn. 15; National Surety Co. v. State Sav. Bank (8 Cir.) 156 F. 21; see, also, McKay v. Nat. Union F. Ins. Co. 182 Minn. 378, 234 N. W. 589; City of Ortonville v. Hahn, 181 Minn. 271, 232 N. W. 320.

■ Defendant contends that this action is barred because of the negligence of Farmers Union in failing to timely discover the forged instruments and because of laches in its failure to promptly notify defendant thereof after discovery. It is well settled that the drawer of checks must examine cancelled vouchers to ascertain the genuineness of his signature thereon and to determine that the names of the payees therein have not been changed or the amounts in the checks increased or altered in any vital aspect, but there is no duty upon such a drawer to discover forged endorsements because ordinarily he would not be familiar with the signatures of the payees designated in the checks. City of St. Paul v. Merchants Nat. Bank, 151 Minn. 485, 187 N. W. 516, 22 A. L. R. 1221; Home Ind. Co. v. State Bank, 233 Iowa 103, 8 N. W. (2d) 757; U. S. Cold Storage Co. v. Central Mfg. Dist. Bank, 343 Ill. 503, 175 N. E. 825, 74 A. L. R. 811; Detroit Piston Ring Co. v. Wayne County & H. Sav. Bank, 252 Mich. 163, 233 N. W. 185, 75 A. L. R. 1273; Fletcher Am. Nat. Bank v. Crescent Paper Co. 193 Ind. 329, 139 N. E. 664; National Surety Co. v. Manhattan Co. 252 N. Y. 247, 169 N. E. 372, 67 A. L. R. 1113; Annotations, 15 A. L. R. 166 and 67 A. L. R. 1121, note IV*b;* see, Ladd & Tilton Bank v. United States (9 Cir.) 30 F. (2d) 334; Iron City Nat. Bank v. Ft. Pitt Nat. Bank, 159 Pa. 46, 28 A. 195, 23 L. R. A. 615. A different situation might arise if direct notice of such forgeries were in some manner brought to his attention. Here there is no evidence that Farmers Union had notice or knowledge of any kind relative to the forged endorsements. It follows that no negligence attached because of its failure in this respect.

Defendant contends, however, that the long delay in notifying him, after discovery of the forged instruments, constitutes a bar to the present proceedings. Mere delay in giving notice of discovery of a forged endorsement does not affect the drawer's right to sue the party negotiating the forged instrument (Clearfield Trust Co. v. United States, 318 U. S. 363, 63 S. Ct. 573, 87 L. ed. 838; United States v. Nat. Exch. Bank, 214 U. S. 302, 29 S. Ct. 665, 53 L. ed. 1006, 16 Ann. Cas. 1184; Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 9 S. Ct. 3, 32 L. ed. 342; Ladd & Tilton Bank v. United States [9 Cir.] 30 F. [2d] 334; American Exch. Nat. Bank v. Yorkville Bank, 122 Misc. 616, 204 N. Y. S. 621; 10 C. J. S., Bills and Notes, § 467), unless it can be established that such delay caused damage or prejudice to the party negotiating the forged instruments. See, Clearfield Trust Co. v. United States, 318 U. S. 363, 63 S. Ct. 573, 87 L. ed. 838; United States v. Nat. Exch. Bank, 214 U. S. 302, 29 S. Ct. 665, 53 L. ed. 1006, 16 Ann. Cas. 1184; United States v. First Nat. Bank (7 Cir.) 138 F. (2d) 681; United States v. Clinton Nat. Bank (8 Cir.) 28 F. 357; United States v. Nat. City Bank (2 Cir.) 28 F. Supp. 144; Home Ind. Co. v. State Bank, 233 Iowa 103, 8 N. W. (2d) 757; 10 C. J. S., Bills and Notes, § 467; Annotation, L. R. A. 1916E, 543, note III; cf. Houseman-Spitzley Corp. v. American State Bank, 205 Mich. 268, 171 N. W. 543. Before the exception becomes applicable, the damages occasioned by the delay must be definitely established. They cannot be left to speculation or conjecture. See, Clearfield Trust Co. v. United States, *supra;* Home Ind. Co. v. State Bank, *supra;* see, also, National Surety Co. v. Manhattan Co. 252 N. Y. 247, 169 N. E. 372, 67 A. L. R. 1113; 15 Am. Jur., Damages, §§ 329, 356.

In the present proceedings, defendant presented no evidence of damages resulting to him because of the delay in receiving notice of the forgeries. Had he made payment of the checks subsequent thereto, a valid claim for damages might be established. The last check presented by Berke, however, was cashed long prior to discovery of the forgeries by Farmers Union. There is no showing

that defendant might have recovered his losses from Berke had he known sooner of the forgeries or that delay in forwarding him notice thereof nullified his claims against Berke because of the latter's removal or insolvency subsequent to discovery of the forgeries by Farmers Union. The mere allegation of damages without evidence to sustain the claim thereof is insufficient to constitute a bar to proceedings or to establish estoppel because of negligence or laches.

■ Defendant asserts that Farmers Union was negligent in hiring Berke, a convicted forger, and in permitting him to requisition checks and that such negligence constitutes a bar to recovery upon its part and, hence, upon the part of its subrogee. There is no evidence establishing that Farmers Union, at the time Berke was hired, was aware of the fact that he was a convicted forger. The negligence of the drawer of a check is immaterial, unless it directly and proximately affects the conduct of any bank or other business entity through which the check may pass. See, Home Ind. Co. v. State Bank, 233 Iowa 103, 8 N. W. (2d) 757; Los Angeles Inv. Co. v. Home Sav. Bank, 180 Cal. 601, 182 P. 293, 5 A. L. R. 1193; U. S. Cold Storage Co. v. Central Mfg. Dist. Bank, 343 Ill. 503, 175 N. E. 825, 74 A. L. R. 811; Jordan Marsh Co. v. Nat. Shawmut Bank, 201 Mass. 397, 87 N. E. 740, 22 L.R.A.(N.S.) 250; Detroit Piston Ring Co. v. Wayne County & H. Sav. Bank, 252 Mich. 163, 233 N. W. 185, 75 A. L. R. 1273. It must be the proximate cause of the loss before it constitutes a bar to the drawer's recovery against a third party. See, Montgomery Ward & Co. Inc. v. Central Co-op. Assn. 201 Minn. 425, 276 N. W. 731; Washington Loan & Trust Co. v. United States, 77 App. D. C. 284, 134 F. (2d) 59; National Metropolitan Bank v. United States, 323 U. S. 454, 65 S. Ct. 354, 89 L. ed. 383; Home Ind. Co. v. State Bank, *supra;* Land Title B. & T. Co. v. Cheltenham Nat. Bank, 362 Pa. 30, 66 A. (2d) 768. Here the evidence fails to establish a casual relationship between any negligence on the part of Farmers Union and the subsequent loss.

█ On the contrary, defendant's actions in cashing the checks without investigation seem to have been the direct and proximate cause of the loss. Oscar Kelley, defendant's bartender who cashed the checks as defendant's agent, testified that they were cashed with the knowledge that Berke was not the payee therein, that they were cashed upon Berke's signature alone without inquiry as to the payees or their respective endorsements thereon, that no inquiry was made as to how Berke came into their possession though made out to others as payees, that Berke was paid the money if he signed the checks regardless of the payees designated therein, and that this was done because he felt that he knew Mr. Berke as a customer although he knew nothing further about his background. He made no inquiry of anyone concerning Berke or his authority with respect to the checks. He did not require identification as to the payee's endorsement or ask for security or the endorsement of a person known to be financially responsible. Defendant's reliance upon his knowledge of Berke as a customer constituted the sole basis for cashing the checks. In this he was negligent, and such negligence was the direct and proximate cause of the loss that followed. It is well settled that one who acts upon the endorsement of negotiable paper must ascertain its genuineness at his peril. See, Home Ind. Co. v. State Bank, *supra;* American Exp. Co. v. Peoples Sav. Bank, 192 Iowa 366, 371, 181 N. W. 701, 704; United Workmen v. State Bank, 92 Kan. 876, 142 P. 974; Kansas City Title & Trust Co. v. Fourth Nat. Bank, 135 Kan. 414, 10 P. (2d) 896, 87 A. L. R. 334; Independent Oil Men's Assn. v. Ft. Dearborn Nat. Bank, 226 Ill. App. 570; Cohen v. Lincoln Sav. Bank, 275 N. Y. 399, 10 N. E. (2d) 457, 112 A. L. R. 1424, affirming 250 App. Div. 702, 294 N. Y. S. 488; 10 C. J. S., Bills and Notes, § 494.

The facts as outlined above being undisputed, there was no issue for submission to the jury, and the trial court correctly directed a verdict in plaintiff's favor. 6 Dunnell, Dig. & Supp. § 9764.

The order appealed from is affirmed.

Affirmed.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

